GEORGIE S. COLLISTER, Respondent, *v.* AMELIA A. FASSITT, Appellant.

1. WILL — TRUST CREATED BY — DISCRETION OF TRUSTEE. A provision in a will directing testator's wife, out of the residuary estate bequeathed to her, to use so much as she shall from time to time, in her discretion, think best so to do for the support and benefit of a niece who had lived with testator and had been treated by him as a daughter, and for whom, after the wife's death, the will also provides an annual payment of $1,000 while she remains unmarried, cannot be deemed merely precatory, but shows an intention to create a charge upon the residuary estate for the support and benefit of the niece, which can be enforced in a court of equity, leaving to the wife a discretion only as to the amount necessary.

2. FAILURE TO EXERCISE DISCRETION AS TO CHARGE ON RESIDUARY ESTATE. A court of equity may ascertain the amount and decree the payment of a reasonable sum for the support of a person, which is charged on a residuary estate by a will in which the amount is left to the discretion of testator's wife as residuary legatee, where she fails to honestly and fairly exercise such discretion.

*Collister* v. *Fassitt*, 23 App. Div. 466, affirmed.

(Argued April 24, 1900; decided June 5, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1897, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The action was brought to construe and enforce the will of Gerard B. Scranton, who died in the city of New York in December, 1888. The provisions in controversy are found in the fourth, fifth, sixth and eighth paragraphs thereof, and are as follows :

"*Fourth.* I direct my wife, Amelia A. Scranton, out of the property hereinafter given and bequeathed to her by this will, to use so much thereof for the support and benefit of my niece, Georgie S. Collister, as my said wife shall from time to time in her discretion think best so to do.

"*Fifth.* I give and bequeath to my executor and executrix hereinbefore named the sum of twenty thousand dollars ($20,000), upon trust, to invest the same and to pay the net income thereof annually to my wife, Amelia A. Scranton, during her lifetime ; but on and after the death of my wife, Amelia A. Scranton, I direct my surviving executor to pay out of the net annual income of said twenty thousand dollars ($20,000) as so invested to my niece, Georgie S. Collister, if she shall then be unmarried, the annual sum of one thousand dollars ($1,000), in equal quarter installments of two hundred and fifty dollars ($250), until the marriage of my said niece, Georgie S. Collister ; and if my niece, Georgie S. Collister, shall never marry, for or during her natural life ; but if my said niece, Georgie S. Collister, shall, at the time of the death of my wife, Amelia A. Scranton, be married, then I direct that my said niece, Georgie S. Collister, shall take nothing under this bequest.

"*Sixth.* I give and bequeath to my executor and executrix hereinbefore named the sum of fifty thousand dollars ($50,000), upon trust, to invest the same and to pay the income thereof to my wife, Amelia A. Scranton, annually, until my daughter, Amelia E. Scranton, shall arrive at the age of twenty-eight (28), and then I direct that my executor and executrix transfer to my said daughter, Amelia E. Scranton, the securities representing said fifty thousand dollars ($50,000) so invested.

"*Eighth.* I give, devise and bequeath all the rest, residue

and remainder of the estate, both real and personal, of which I shall be seized or possessed or to which I shall be entitled at the time of my death, to my wife, Amelia A. Scranton, absolutely."

The further material facts are stated in the opinion.

*John R. Dos Passos* and *Edmund F. Harding* for appellant. No trust or charge was created or intended by the testator. (*Lawrence* v. *Cooke,* 104 N. Y. 632; 2 Pom. Eq. Juris. [2d ed.] 1014; 1 Lewin on Trusts, 71, 136; 1 Perry on Trusts [4th ed.], §§ 112, 115; *Carey* v. *Carey,* 2 Sch. & Lef. 189; *White* v. *Griggs,* 2 Phillips' Ch. 583; *Phillips* v. *Phillips,* 112 N. Y. 197; *Foose* v. *Whitmore,* 82 N. Y. 405; *Clay* v. *Wood,* 153 N. Y. 134; *Matter of Gardner,* 140 N. Y. 122; *Matter of Adams,* L. R. [20 Ch. Div.] 346; *Matter of Pennock,* 20 Penn. St. 268; *Clarke* v. *Leupp,* 88 N. Y. 228.)

*Hamilton Wallis* for respondent. The testator by his will created a charge or imposed a trust upon so much of his estate as should come into the possession of his wife, in favor of the plaintiff, for an amount adequate to her support and maintenance. (*Colton* v. *Colton,* 127 U. S. 300; *Wolfe* v. *Van Nostrand,* 2 N. Y. 436; *Bliven* v. *Seymour,* 88 N. Y. 476; *Foose* v. *Whitmore,* 82 N. Y. 405; *Phillips* v. *Phillips,* 112 N. Y. 197; *Leach* v. *Leach,* 13 Sim. 304; *Longmore* v. *Elcum,* 2 Y. & C. 363; *Loring* v. *Loring,* 100 Mass. 340.) The plaintiff is entitled to receive compensation for the amounts which she should have received before the commencement of this action. (*Ireland* v. *Ireland,* 84 N. Y. 321; *McArthur* v. *Gordon,* 126 N. Y. 597.)

BARTLETT, J. This appeal presents the question whether subdivision "Fourth" of the testator's will creates a trust for the benefit of the plaintiff or a charge · upon the residuary estate in her favor, which can be enforced in a court of equity.

The courts below have rendered judgment for the plaintiff; and this appeal is from a unanimous decision of the Appellate Division.

In order to properly construe the various provisions of the will and to ascertain the intention of the testator, it is necessary to consider the surrounding circumstances that culminated in the testamentary act.

The plaintiff was the niece of the testator — a child of his deceased sister ; he took her into his family when six years old, and she was about seventeen years of age when he died in December, 1888 ; he bestowed upon her the same care, maintenance and education as he gave his daughter, who was a few months older than plaintiff, and she accompanied him and his wife and daughter on several trips to Europe, traveling and sojourning with them there for nearly five years.

In September, 1888, about three months before his death, the testator executed his will wherein he provided for the plaintiff, his daughter and his wife, who is the defendant in this action, she having contracted a second marriage with one Fassitt.

The scheme of the testator is clear and consistent with the situation which confronted him ; he made his wife the executrix of his will in addition to an executor named ; he created a trust fund for the benefit of his mother during life ; he directed his wife out of the property " hereinafter given and bequeathed to her," which was the residuary estate, to use so much thereof for the support and benefit of the plaintiff as she should from time to time in her discretion think best so to do ; he created a trust fund of $20,000, the income of which was to be paid to his wife for life, and at her death $1,000 of the income was to be paid to plaintiff until her marriage, and if she never married then during her life ; he created a trust fund of $50,000, the income of which was to be paid to his wife until his daughter attained the age of twenty-eight years, when the trust terminated and the principal vested in the daughter ; he gave the residue of his estate to his wife.

The testator's personal estate at the time of his death

amounted to about $193,000.00. It will thus be seen that, so far as plaintiff was concerned, the testator made complete provision for her future support; he confided it to the discretion of his wife as to amount during her life, and at her death the plaintiff was to receive $1,000 a year until her marriage, and if she did not marry, for life.

If the intention of this testator is to control, as it surely must, it cannot be assumed that he meant to leave this child of seventeen, of his own blood, the object of his solicitude for years, to face the world and earn her own living, if it was so ordered by the mere caprice or ill-will of his widow.

The fourth subdivision of the will, providing for plaintiff's support, and the eighth, devising and bequeathing the residuary estate to the wife, must be read together. The fourth subdivision reads: " I direct my wife   *   *   *   out of the property hereinafter given and bequeathed to her by this will to use so much thereof for the support and benefit of my niece, Georgie S. Collister, as my said wife shall, from time to time, in her discretion think best so to do."

The eighth subdivision devises and bequeaths to the wife the rest, residue and remainder of the estate. This is the only devise and bequest to the wife, so there is no uncertainty when we read in the fourth subdivision the direction that " out of the property hereinafter given " to her she was " to use so much thereof for the support and benefit " of the niece " from time to time," as she should in her discretion think best.

This positive direction of the testator points out the fund and creates a charge thereon; the amount for support and benefit is to be taken out " from time to time;" the sum necessary is alone left to the discretion of the wife, as it might very well vary according to existing circumstances in the years to come.

It is, however, vigorously argued orally, and in the briefs on behalf of the appellant, that the words of the fourth subdivision of the will are merely precatory and do not cut down or qualify the words of absolute devise and bequest in the residuary clause.

It is also insisted by counsel that to sustain the validity of the clause in question is to overrule a number of cases in this court.

It is a trite saying that no will has a brother, and it may also be said that the citation of numerous authorities, in most instances, are of little assistance to the court, as each will must be construed in the light of peculiar surrounding circumstances, the scheme disclosed, the language employed and the intention of the testator gathered from the general situation. In the case before us the intention of the testator to provide for the continuous support of his niece from his decease until she married or died, is absolutely clear.

The cases cited in this court do not stand in the way of carrying out this intention of the testator. In none of them is there a state of facts similar to that here presented.

In *Foose* v. *Whitmore* (82 N. Y. 405) the will read: "I * * * give and bequeath all my property, real and personal, to my beloved wife, Mary, only requesting her, at the close of her life, to make such disposition of the same among my children and grandchildren, as shall seem to her good." It is very clear that these are precatory words. The testator gives everything to his wife absolutely, with a mere suggestion as to the disposition she shall make of the property at the close of her life. The wife, vested with absolute title and living many years, the estate at her death might be necessarily expended, or improvidently wasted. The testator's words evidently created no trust or charge.

In *Clarke* v. *Leupp* (88 N. Y. 228) the testator gave all his property to his wife, closing with the words, "and do appoint my wife * * * my true and lawful attorney and sole executrix of this my will, to take charge of my property after my death, and retain or dispose of the same for the benefit of herself and children above named." It was held the widow took an absolute title, and that the succeeding words did not limit the gift. In the case cited, we have an absolute gift, followed by words that were held not to disclose the clear intention to cut it down. (*Banzer* v. *Banzer,* 156 N.

Y. 429.) In the case at bar the situation is reversed and the words creating the trust, or charge, stand first in the will, and the absolute gift is subject to the same; when construed together they are perfectly consistent.

The case of *Lawrence* v. *Cooke* (104 N. Y. 632) is cited by appellant as controlling on this appeal. The grandfather of the defendant, after devising and bequeathing his residuary estate to her, added these words: "I commit my grand-daughter (the plaintiff) * * * to the charge and guardian-ship of my daughter (the defendant). * * * I enjoin upon her to make such provision for said grandchild out of my residuary estate * * * in such manner at such times and in such amounts as she may judge to be expedient and conducive to the welfare of said grandchild, and her own sense of justice and christian duty shall dictate." In holding that no trust or charge was created under the facts disclosed, Judge RAPALLO said : " If the clause had been that the testa-tor enjoined upon the defendant to make suitable provision, out of the residuary estate, for the support of the plaintiff, there would be force in the argument, not indeed that the defendant took the residuary estate in trust, but that she took it subject to a charge, the amount of which might be ascer-tained by a court of equity, and satisfaction thereof decreed. But such is not the language of the will. * * * There was nothing in the will which required her to provide for the support of the grandchild during her minority. She was liv-ing with her father, out of the state. No obligation was imposed upon the defendant by her father's will to indemnify the father of the plaintiff for her support, or to furnish him with means therefor. The provision in the will was not intended for the benefit of the father of the plaintiff, nor to relieve him from his legal obligation to support his own child. All these matters were left wholly to the discretion of the defendant, uncontrolled by any consideration except, to use the language of the testator, what 'her own sense of jus-tice and christian duty shall dictate.' "

Every word quoted from the opinion of the learned judge

distinguishes the case in which he was writing from the one at bar, and the case he put by way of illustration as creating a charge which a court of equity would enforce is, in substance, the case before us.

In *Matter of Gardner* (140 N. Y. 122) the testator, after vesting the absolute title of his property in his wife, provided that if any part of it should remain unexpended at her death, he gave it to his son, his heirs and assigns. Following this was the expression of testator's expectation and desire that his wife should not dispose of any of the estate by will so that it would go out of his " own family and blood relations." It was held that the words of expectation and desire did not qualify the wife's absolute estate ; also, that if the words could be construed as a power in trust for the son it was fully executed.

This case has no application to the one before us, and does not announce any principle in hostility to affirming the judgment at bar.

In *Clay* v. *Wood* (153 N. Y. 134) we have a case where an absolute estate in the wife is followed by the following words : " And it is my desire and request that my said wife do sustain, provide for and educate   *   *   *   the daughter of my said adopted daughter.   *   *   *   And it is my further desire and request that my wife do make the said   *   *   * and my nephews and nieces, the children of my brothers,   *   *   *   joint heirs after her death in the said estate which by this will I have bequeathed to my said wife." This clause was held precatory, and the estate absolute in the wife. This conclusion was reached because the words construed followed the absolute devise and bequest, and for the further reason that the facts surrounding the making of the will warranted the conclusion. The case has no fact in common with the one before us, and illustrates how dangerous it is to follow supposed precedents in construing wills which have their origin in the varying experiences of human life.

We have already pointed out what seems to us the intention of the testator, which was to charge the support of his niece

upon the residuary estate subsequently vested in his wife. This intention is, therefore, the controlling factor in the case, and there is no authority holding to the contrary.

In *Phillips* v. *Phillips* (112 N. Y. 197), after a gift of all his estate to his wife, the testator inserted this provision : " If she find it always convenient  *  *  *  to give my brother  *  *  *  during his life the interest on $10,000 (or $700 per annum), I wish it to be done." It was proved that during the years the widow refused to make these payments it was entirely convenient for her to have paid the allowance. It was held that the provision contemplated, not the widow's choice or preference, but her pecuniary condition each year ; that the intent of the testator was to charge the annuities upon the gift to his wife if convenient for her to pay them.

Judge FINCH, in delivering the opinion of the court, said : " The primary question in every case is the intention of the testator, and whether in the use of precatory words he meant merely to advise or influence the discretion of the devisee, or himself to control or direct the disposition intended. In such a case we must look at the whole will, so far as it bears upon the inquiry, and the use of the words ' I wish ' or ' I desire ' is by no means conclusive. They serve to raise the question, but not necessarily to decide it. We are convinced that in the present case the testator meant to charge upon the gift to the wife the annuities to his sister and brother, provided, only, that their payment should not occasion her inconvenience."

In *Colton* v. *Colton* (127 U. S. 300) the Supreme Court of the United States held, in a case where there was an absolute gift of the estate to the wife followed by the words " I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best," that the mother and sister took under the will a beneficial interest in the estate given to the wife to the extent of a permanent provision for them during their respective lives, suitable and sufficient for their care and protection, having regard to their condition and necessities, and the amount and value of the fund. Also that it was the

37

duty of the court to ascertain what provision would be suitable and best under the circumstances and all particulars and details for securing and paying it.

Mr. Justice MATTHEWS said : " If there be a trust sufficiently expressed and capable of enforcement by a court of equity, it does not disparage, much less defeat it, to call it ' precatory.' The question of its existence after all depends upon the intention of the testator as expressed by the words he has used, according to their natural meaning, modified only by the context and the situation and circumstances of the testator when he used them. On the one hand, the words may be merely those of suggestion, counsel or advice, intended only to influence and not take away the discretion of the legatee, growing out of his right to use and dispose of the property given as his own. On the other hand, the language employed may be imperative in fact though not in form, conveying the intention of the testator in terms equivalent to a command and leaving to the legatee no discretion to defeat his wishes, although there may be a discretion to accomplish them by a choice of methods, or even to define and limit the extent of the interest conferred upon his beneficiary."

It thus appears that the fact, in the case at bar, that the testator left the amount to be used for the support of his niece to the discretion of his wife offers no obstacle to a court of equity. This discretion must be honestly and intelligently exercised, and if it is not, a court of equity will compel it.

In *Costabadie* v. *Costabadie* (6 Hare, 410) the court said: " If the gift be subject to the discretion of another person, so long as that person exercises a sound and honest discretion, I am not aware of any principle or any authority upon which the court should deprive the party of that discretionary power. Where a proper and honest discretion is exercised, the legatee takes all that the testator gives or intended that he should have, that is, as much as in the honest and reasonable exercise of that discretion he is entitled to. That is the measure of the legacy. But consistently with the plaintiff having an interest subject to the mother's discretion, she has

a right to discovery of the property in respect of which the interest exists, and also a right to a discovery of all the acts which have been done, and the reasons for doing them which the defendant may be able to give. She has that right in order that the court may be able to see whether the discretion which has been exercised by the party intrusted with it is within the limits of a sound and honest execution of the trust. * * * If a bill be filed, the court will, of course, inquire into the acts which may have been done in the administration of the trust, and may possibly (as has been done in many cases) require the trustee to exercise the discretion under the view of the court."

In *Lawrence* v. *Cooke* (104 N. Y. at page 638) Judge RAPALLO said, in language already quoted, that if the wife took the estate subject to a charge, the amount " might be ascertained by a court of equity and satisfaction thereof decreed."

In the case at bar the discretion of the defendant was not properly or honestly exercised. The defendant contributed to the support of plaintiff in 1888, $25; 1889, $188.50; 1890, $150; 1891, $65.50; 1892, $119.70; 1893, $207.14, and 1894, $25.00. Since the year 1894 the defendant has made no provision for plaintiff's support, so far as this record discloses the facts.

The plaintiff while living with her grandmother, testator's mother, paid nothing for her board and lodging, but maintained herself by giving music lessons and on such sums as were contributed by defendant, as before stated.

Plaintiff lived with her grandmother until the death of the latter, about September, 1894, and received under her will the whole of her estate, amounting to about $2,000.00. It is found that soon after this the plaintiff, for the purpose of earning a livelihood, entered the Presbyterian Hospital in the city of New York to fit herself for the position of a trained nurse, expecting to graduate in May, 1898; that while in the hospital she received her board and lodging and a salary of $9 per month, and after graduation she will earn $22.00 a week when able to secure employment; that she is dependent

on her earnings and the income of $1,500 remaining of her grandmother's estate.

In view of this situation the Supreme Court has adjudged that for the six years from December 8th, 1888, the date of testator's death, the plaintiff is entitled to $500 a year, payable quarterly, and since that time to $1,000.00 a year, payable in like manner.

We are of opinion that the defendant took the residuary estate of the testator charged with the payment of a reasonable amount for the support of the plaintiff, in accordance with the terms of the will, and as she failed to honestly and fairly exercise the discretion vested in her, it was competent for a court of equity to ascertain the amount and decree its payment.

In closing, it may be be proper to notice two additional points raised by appellant's counsel.

It is insisted that the plaintiff having left the home of testator three months before his death, discarded his surname and assumed her own of Collister, had changed her relations with the family and to some extent caused the testator to treat her differently than he might otherwise have done.

The referee finds that the plaintiff resided with her grandmother from "about September 7th, 1888." The testator's will is dated September 11th, 1888, and refers to his niece as Georgie S. Collister. It is evident that the will was not made after the plaintiff had been long separated from testator, and it is quite possible she was a member of his household when it was executed.

The other point is raised by an offer made by defendant to the plaintiff at the trial in the form of a letter which was offered in evidence and excluded, defendant excepting. The letter is dated November 18th, 1896, and is as follows : " I have concluded to exercise the discretion vested in me under the will of my late husband, Gerard B. Scranton, deceased, dated the 11th day of September, 1888, and to allow you the sum of $400 a year for your support and benefit, the same to accrue to you from November 1st, 1895."

This offer was properly rejected for several reasons; it did not deal with nearly eight years prior to November 1st, 1895, during which time defendant had failed to fairly contribute to plaintiff's support; it was not on its face an honest and fair exercise of the discretion vested in defendant; it was inconsistent with the answer which repudiated all right in the plaintiff (*Clark* v. *Post*, 113 N. Y. 17); it did not purport to be an offer of judgment under the Code of Civil Procedure.

We do not deem it necessary to discuss the other points of counsel, which have, however, received due consideration.

The judgment appealed from should be affirmed, with costs.

O'BRIEN, J. (dissenting). This was an action for the judicial construction of the will of Gerard B. Scranton, who died in December, 1888, leaving a widow and one daughter, who received the bulk of his estate. After directing the payment of his debts and appointing executors, of whom the widow was one, three separate trusts were created for the benefit of the testator's mother, wife and daughter, as to which there is no question raised in this case. By the last or residuary clause the testator devised and bequeathed all the rest, residue and remainder of the estate, both real and personal, of which he should die seized or possessed, or to which he should be entitled at the time of his death, to his wife absolutely. The plaintiff is a niece of the testator. She entered his family when about six or seven years of age and resided with him as a member of his family until a few months before his death, when she went to reside with her grandmother, where she resided until the grandmother's death in September, 1894, nearly six years after the death of the testator. By the fourth clause of the will the testator referred to the plaintiff in the following language: "I direct my wife, Amelia A. Scranton, out of the property hereinafter given and bequeathed to her by this will, to use so much thereof for the support and benefit of my niece, Georgie S. Collister, as my said wife shall, from time to time, in her discretion, think best so to do."

The only question presented by this appeal is whether this

language creates a trust in favor of the plaintiff, or a charge upon the property given to the widow, or a disposition of property in any form or any right to share in the estate which the courts have power to enforce. The courts below have given construction to this provision of the will, and by the judgment it is decreed that the defendant, the widow of the testator, is bound to pay to the plaintiff the sum of $5,000, besides costs and an additional allowance for what accrued to her under this clause of the will up to the time of the entry of judgment; and, further, that the plaintiff is entitled to be paid out of the property given and bequeathed to the defendant by the will, for the plaintiff's support and benefit, the sum of $1,000 in each and every year during the term of her natural life, or until she shall marry, to be paid in quarterly payments commencing on the 8th day of March, 1897, and quarterly thereafter in each and every year, and the defendant is directed by the judgment to make such payments at the times and in the amounts thus adjudged. The judgment is, in theory, supposed to reflect the will and intention of the testator, and the intention is imputed to him that the plaintiff should be paid in each and every year during her life or until her marriage the sum of $1,000 for her support. I am unable to see that this judgment has any foundation whatever in the will upon which it is based. Independent of the question whether the words quoted are sufficient to create a trust or a charge upon the property of any kind, it is quite clear that the amount to be contributed, if any, was left entirely in the discretion of the defendant, and the courts have determined that this discretion shall be exercised at certain times by the payment of a specified sum of money, and it is said that all of this is in accordance with the expressed intention of the testator. The plaintiff not only recovers a specified sum to be paid in the future, but all arrears that are said to have accrued to her during the five years that she lived with her grandmother. It seems to me that this is simply a perversion of the will, since it substitutes the discretion and judgment of a court for the discretion of the widow

But it is quite clear that, unless we are prepared to over-rule a long line of decisions in this court, this provision of the will created no trust in favor of the plaintiff, or any charge upon the estate devised and bequeathed to the defendant.    It was simply the expression of a desire, request or expectation on the part of the testator.    In other words, he requested his wife to contribute such sums for the benefit of the plaintiff, from time to time, as in her discretion she thought best. These words created no positive obligation on the part of the widow or any charge upon the estate.    That this view is in accordance with the settled law of this state seems to me very clear, and it will be necessary to refer to only a few of the more recent cases.    In *Foose* v. *Whitmore* (82 N. Y. 405) the provision of the will was, " I   *   *   *   give and bequeath all my property, real and personal, to my beloved wife, Mary, only requesting her, at the close of her life, to make such dis-position of the same among my children and grandchildren as shall seem to her good."    It was held that the gift to the wife was absolute ; that the concluding words amounted to a mere suggestion, and did not create a trust or any charge upon the estate.    In *Clarke* v. *Leupp* (88 N. Y. 228) the testator declared that he deemed it his duty to make a will for the benefit and protection of his wife and his two children, and then proceeded as follows : " I do, therefore, make this my last will and testament, giving and bequeathing to my wife, Caroline, all of my property, real and personal,   *   *   *   and do appoint my wife   *   *   *   my true and lawful attorney and sole execu-trix of this my will, to take charge of my property after my death, and retain or dispose of the same for the benefit of herself and children above named."    It was held that the widow took an absolute title to all of the testator's estate ; that it was not intended by the words succeeding to limit or cut down the absolute gift, and that there was no trust created. In *Lawrence* v. *Cooke* (104 N. Y. 632), after a gift of the residuary estate to the testator's daughter and to her heirs and assigns forever, the following words were added : " I com-mit my granddaughter   *   *   *   to the charge and guardianship

of my daughter. * * * I enjoin upon her to make such provision for said grandchild out of my residuary estate * * * in such manner and at such times and in such amounts as she may judge to be expedient and conducive to the welfare of said grandchild, and her own sense of justice and Christian duty shall dictate." In a suit by the grand-daughter, it was held that no trust was created, nor any charge upon the property given by the will to the daughter; that the legatee took an absolute title, and the provision made for the granddaughter was left wholly to her discretion as to the amount and manner, as well as the time when it should be made, and that this discretion could not be interfered with by the court. In *Matter of Gardner* (140 N. Y. 122) the testator gave his residuary estate to his wife, to have and to hold the same and every part and parcel thereof to her and her heirs forever, provided, however, that if any part of it should remain unexpended or undisposed of at her death this he gave to his son, his heirs and assigns. Following this was an expression of the testator's expectation and desire that his wife should not dispose of any of the estate by will in such a way that the whole that might remain at her death would go out of his "own family and blood relations." The testator had but one child, a son by a former wife. The widow died, leaving a will which disposed of so much of the residuary estate as remained at her death, giving a large portion thereof to the son and also one-fourth of her residuary estate, after the expiration of a life estate given therein, and another fourth to the sister of her husband. It was held that the estate of the wife was not limited or qualified by the concluding paragraph expressing the testator's expectation and desire. In *Clay* v. *Wood* (153 N. Y. 134) the testator gave certain real and personal property to his wife, to have and to hold unto her and her heirs, executors, administrators and assigns forever, and legacies to others which were declared not to be a charge upon the property given to the wife, and then gave all the residue of the estate to the wife and to her heirs, executors, administrators and assigns forever, fol-

lowed by these words : " And it is my desire and request that my said wife do sustain, provide for and educate Lucretia, the daughter of my said adopted daughter Josephine, and it is my further desire and request that my wife do make the said Lucretia, Josephine, and my nephews and nieces, the children of my brothers C. & G., joint heirs after her death in the said estate which, by this will, I have bequeathed to my said wife." It was held that the testator intended an absolute gift to the wife, except the legacies to others, with an absolute right of disposition, and that such gift was not qualified by the subsequent precatory clause, and that, hence, no trust or power in trust in favor of the persons mentioned in that clause was created thereby. I think the doctrine of these cases is decisive of the question now before us. It seems to me impossible to make any sound distinction between the case at bar and those referred to. The judgment in this case cannot, as it seems to me, be sustained without overruling the legal principle which has been so long and so often enunciated by this court.

It appears from the record that the plaintiff did, after the death of her husband, exercise her discretion under this clause of the will and contributed for the plaintiff's benefit in each year a sum averaging something less than $200. It has been held, however, thus far, that the defendant has substantially disregarded this provision of the will by the payment of so small a sum. While I am of the opinion that, under the law of this state, the defendant's discretion was left entirely unfettered by the terms of the will, and that no court has any right to prescribe the time or manner in which it shall be exercised, yet there is a feature of the case that might possibly permit a modification of the judgment without overthrowing the principle of the cases already referred to. On the trial of this case the defendant stipulated in open court that she was willing to be bound to the exercise of the discretion enjoined by the will to the extent of $400 per year. I think that, under the circumstances, the court had the power to hold her to this stipulation and I would be in favor of modifying the judgment

38

accordingly; but there is no other ground, I think, upon which the plaintiff's claim to share in the estate, as a matter of absolute right, can be sustained without disturbing settled rules of law. Unless the judgment can be so modified it should be reversed and a new trial granted.

HAIGHT, VANN and LANDON, JJ., concur with BARTLETT, J., for affirmance; PARKER, Ch. J., and MARTIN, J., concur with O'BRIEN, J., for reversal.

Judgment affirmed.